UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JERRY HALL,

                                  Plaintiff,

                -vs-                                       06-CV-217-JTC

NATIONAL CITY BANK OF PENNSYLVANIA,

                                  Defendant.

_____

This action, initiated in New York State Supreme Court, Chautauqua County, and removed to this court on the basis of diversity of citizenship of the parties, seeks money damages for breach of an investment contract. Defendant National City Bank of Pennsylvania ("National City") has moved pursuant to Rule 56(c) of the Federal Rules of Civil Procedure for summary judgment dismissing the complaint, and plaintiff has filed a cross-motion for partial summary judgment.

For the reasons that follow, defendant's motion is granted, plaintiff's cross-motion is denied, and the complaint is dismissed.

## **BACKGROUND**

On January 7, 2000, plaintiff and National City executed a "Discretionary Agency Agreement"(the "Agreement") which provides, in pertinent part:

> 1.     <u>Parties and Property</u>. . . . [National City] hereby agrees to administer under the terms of this Agreement all property assigned and delivered to [National City] hereunder, all reinvestments thereof, and all income derived from such property and from such reinvestments (hereinafter the "property").
>
> . . . .

> 3. <u>Duties</u>. [National City] shall: (a) collect all payments due on the property; (b) perform the necessary clerical and bookkeeping services relative to the property; (c) advise [plaintiff] of all maturities, redemptions, exchanges, tenders and shareholder rights and options; (d) send [plaintiff] periodic statements . . . showing all receipts, disbursements, and other transactions and an inventory of the property; and (e) disburse or accumulate the net income and disburse the principal as [plaintiff] directs
>
> . . . .
>
> 5. <u>Investments</u>. [National City] shall make investment reviews of and recommendations concerning the property and shall sell, exchange, invest and otherwise deal with the property as [National City] shall determine from time to time in its sole discretion. In addition, [National City] shall sell, exchange, invest and otherwise deal with the property as [plaintiff] from time to time direct[s].
>
> . . . .
>
> 12. <u>Liability</u>. [National City] shall not be liable for the depreciation in value of any property held hereunder due to its compliance with valid directions authorized under this Agreement.

*See* Item 30 (Klein Aff.), Exh. A.

Contemporaneous with the execution of the Agreement, Plaintiff executed a "Disclosure Statement" which provides, in pertinent part:

> [Plaintiff], having entered into an Agreement (the "Agreement") this date with [National City], creating an account thereunder (the "account"), wherein National City is granted investment authority over the assets deposited with National City pursuant to the Agreement, acknowledges the following:
>
> I. That investments purchased or recommended by National City are not the obligation of nor guaranteed by National City or its affiliates;
>
> II. That investments purchased or recommended by National City are not deposits insured by the Federal Deposit Insurance Corporation (FDIC), and are subject to investment risk, including possible loss of principal invested;

> III. That the market values of such investments do fluctuate, and upon liquidation, could be of a value more or less than the market value of [plaintiff's] original deposit into the account created under the Agreement;
>
> IV. That income earned and retained in the said account, or received in distributions from the account, will fluctuate over time;
>
> V. That the investment performance of National City in general, or any of the investments in particular, either reviewed or considered by [plaintiff] in entering the Agreement with National City is past performance only and cannot be considered a guarantee of any future results;
>
> . . . .
>
> VII. That a representative of National City has explained to [plaintiff] fully the contents and meaning of the foregoing provisions of this Disclosure Statement.

See id., Ex. B.

Prior to the execution of the Agreement, plaintiff and his accountant Charles Chiampou met with Chris Breakwell from National City to discuss an Investment Policy Statement ("IPS") prepared by Mr. Chiampou in November 1999. The stated purpose of the IPS was "to assist the Adviser [Chiampou] and Client [plaintiff] in effectively supervising, monitoring and evaluating the investment of the Client's assets." Item 29 (Romanow Aff.), Ex. J, p. 3. The document set forth a detailed proposal for accomplishing plaintiff's investment objectives, including asset allocation, risk of loss tolerance, and other performance guidelines, as well as an outline of various affirmative duties and responsibilities to be utilized in the selection and monitoring of "money managers." The IPS was not executed by plaintiff, Mr. Chiampou, or National City, was not incorporated

into the Agreement, and not referenced or mentioned anywhere in either the Agreement or the accompanying Disclosure Statement.

In accordance with the Agreement, plaintiff deposited one million dollars ($1,000,000.00) into a National City investment account. National City invested the funds, and delivered detailed monthly account statements summarizing investment allocation and account value. *See, e.g.*, Item 30, Ex. C.

In October 2004 plaintiff closed his account with National City. As stated in his affidavit submitted in connection with the pending motions:

> At that time the one million dollar ($1,000,000) account had shrunk to seven hundred fourteen thousand three hundred twenty one dollars and two cents ($714,321.02) for an out of pocket loss of two hundred [eighty-five] thousand six hundred seventy eight dollars and 98 cents ($285,678.98) not to mention the tens of thousands of dollars of lost interest, dividends and appreciation.

Item 40, Hall Aff., ¶ 14.

Plaintiff commenced this action in state court in January 2006 by the filing and service of a summons and complaint. Item 1, Ex. A. He alleges that National City completely disregarded the risk tolerance, asset allocation, and other investment parameters set forth in the IPS, and instead purchased "speculative and risky equities heavily weighted towards the technology sector" which caused the loss in value of his account. *Id.* at ¶ 12. He claims that this conduct on the part of National City constitutes a breach of the Agreement's implied covenant of good faith and fair dealing. *See id.* at ¶¶ 6-14.

Following document discovery and depositions, National City moved for summary judgment on the ground that the evidence does not support a claim for breach of the implied duty of good faith and fair dealing. Plaintiff responded by cross-motion for partial

summary judgment on liability on the ground that National City's failure to follow the instructions set forth in the IPS constitutes a clear breach of fiduciary duty. Plaintiff also seeks a hearing on damages.

## DISCUSSION

**A.     Summary Judgment**

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The court's role at the summary judgment stage is not to resolve issues of fact, but rather to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law."  *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case.  When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  *Gallo v. Prudential Resid. Servs., L.P.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

In ruling on a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir. 1999) (quotation omitted).

Finally, "where the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991). Thus, when a defendant has moved for summary judgment on the ground that the undisputed facts fail to establish an essential element of the claim on which the plaintiff has the burden of proof, and the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his favor on that element, summary judgment should be granted. *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992), *cert. denied*, 508 U.S. 909 (1993); *see also Unterberg Harris Private Equity Partners, L.P. v. Xerox Corp.*, 995 F. Supp. 437, 441 (S.D.N.Y. 1998).

In this case, defendant moves for summary judgment on the ground that plaintiff cannot establish breach of an implied duty of good faith and fair dealing based on a claim of failure to adhere to the terms of the unexecuted IPS. Conversely, plaintiff seeks summary judgment in his favor on the ground that National City's failure to follow the directives of the IPS amounts to a clear breach of fiduciary duty.

**B.    Defendant's Motion: Breach of Implied Duty of Good Faith and Fair Dealing**

As recognized by Pennsylvania law,[1] "'[e]very contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement.'" *Kaplan v. Cablevision of PA, Inc.*, 671 A.2d 716, 721-22 (Pa.Super.) (quoting Restatement (Second) of Contracts, § 205), *appeal denied*, 683 A.2d 883 (Pa. 1996); *see also John B. Conomos, Inc. v. Sun Co., Inc. (R & M)*, 831 A.2d 696, 706 (Pa.Super. 2003) ("Pennsylvania courts impose a general duty of good faith performance on each party in general commercial contracts."), *appeal denied*, 845 A.2d 818 (Pa. 2004). "Good faith" is defined in the Uniform Commercial Code as "honesty in fact and the observance of reasonable commercial standards of fair dealing."  U.C.C. § 1-201(b)(20); 13 Pa.Cons.Stat. § 1201(20).

> "With rare exception, the courts use the U.C.C. good faith requirements in aid and furtherance of the parties' agreement, not to override the parties' agreement for reasons of fairness, policy, or morality."  Thus, courts generally utilize the good faith duty as an interpretive tool to determine "the parties' justifiable expectations," and do not enforce an independent duty divorced from the specific clauses of the contract.

*Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 617 (3d Cir. 1995) (quoting Steven J. Burton, *Symposium: The Revision of Article 2 of the Uniform Commercial Code: Good Faith in Articles 1 and 2 of the U.C.C.: The Practice View*, 35 WM. AND MARY L.REV. 1533, 1534, 1542 (1994)).

In a related vein, Pennsylvania courts have also recognized the common law principle of "necessary implication," described as an agreement by the parties to a contract,

---

[1] The parties agree upon the enforceability of the Agreement's choice-of-law clause, which provides that Pennsylvania law governs the construction and interpretation of the parties' rights and liabilities under the Agreement in this action.

implied in the absence of an express provision, "to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *Daniel B. Van Campen Corp. v. Bldg. & Constr. Trades Council of Phila.*, 195 A.2d 134, 136-37 (Pa.Super. 1963), *quoted in Conomos*, 831 A.2d at 706; *see also Somers v. Somers*, 613 A.2d 1211, 1214 (Pa.Super. 1992). The doctrine of necessary implication has been applied sparingly, and courts "may imply a missing term in a . . . contract only when it is necessary to prevent injustice and it is abundantly clear that the parties intended to be bound by such term." *Kaplan*, 671 A.2d at 720.

Likewise, in the absence of a dispute about the parties' reasonable expectations under a particular term of the contract, an independent duty of good faith and fair dealing has been recognized only in limited situations. *See Duquesne Light Co.*, 66 F.3d at 617-18. As explained by the Third Circuit:

> After all, if contracting parties cannot profitably use their contractual powers without fear that a jury will second-guess them under a vague standard of good faith, the law will impair the predictability that an orderly commerce requires. Thus, an independent contractual duty to act in good faith has been imposed upon franchisors in their dealings with franchisees . . . upon the relationship between insurer and insured . . . and in connection with an employer's attempt to recoup theft losses from the wife of an employee who was responsible for the thefts.

*Duquesne Light Co.*, 66 F.3d at 618 (internal quotations omitted); *see, e.g., Atlantic Richfield Co. v. Razumic*, 390 A.2d 736 (Pa. 1978) (franchisor/franchisee); *Gray v. Nationwide Mutual Ins. Co.*, 223 A.2d 8 (Pa. 1966) (insurer/insured); *Germantown*

*Manufacturing Co. v. Rawlinson*, 491 A.2d 138 (Pa. 1985) (employer's dealings with wife of employee/thief).

As these cases illustrate, the obligation to act in good faith in the performance of contractual duties varies according to the context of the relationship between the parties, and the courts have struggled to decipher useful standards for evaluating whether a breach has occurred. In *Somers*, the court discussed the Restatement's examples of breaching conduct expressed in terms of "certain strains of bad faith which include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Somers*, 613 A.2d at 1213 (citing Restatement (Second) of Contracts, § 205(d)). Other cases have suggested a somewhat broader approach, guided by overarching principles of contract law. *See, e.g., Creeger Brick & Building Supply Inc. v. Mid-State Bank & Trust Co.*, 560 A.2d 151, 154 (Pa.Super. 1989) (duty of good faith and fair dealing does not compel either party to surrender contractual rights which it has bargained for); *Commonwealth v. BASF Corp.*, 2001 WL 1807788, at *12 (Pa.Com.Pl. 2001) ("The underlying principle behind the implied covenant of good faith is 'that neither party shall do anything to injure or destroy the rights of the other party to receive the benefits of the agreement.'") (quoting *CMS Enterprise Group v. Ben & Jerry's Homemade, Inc.*, 1995 WL 500847, at * 7 (Pa.Com.Pl. 1995).

However, the authorities cited agree that, whether express or implied, the duty of good faith "does not create independent substantive rights nor can it override the express contractual terms." *BASF Corp.*, 2001 WL 1807788, at *12 (citing cases). Thus, while the

court may imply a covenant of good faith and fair dealing in the contract between the parties, "its breach is a breach of contract rather than an independent breach of a duty of good faith and fair dealing." *Engstrom v. John Nuveen & Co.*, 668 F. Supp. 953, 958 (E.D.Pa. 1987).

In this case, drawing all reasonable inferences in favor of plaintiff, the court finds that plaintiff has failed to come forward with evidence upon which a rational juror could find that National City improperly performed any of the duties imposed by the Agreement. For one thing, plaintiff does not allege any conduct on the part of National City that could be considered to be in breach of any of the obligations expressed in the contractual language cited above. Nor does plaintiff specifically allege that National City evaded the spirit of the bargain, lacked diligence, willfully rendered imperfect performance, abused a power to specify terms, interfered with or failed to cooperate in plaintiff's performance, or otherwise engaged in any of the types of bad faith conduct recognized by the Pennsylvania courts as sufficient to invoke an independent duty of good faith and fair dealing. Indeed, the proof submitted in support of defendant's summary judgment motion suggests that National City at all times executed its discretionary duties under the express terms of the Agreement to sell, exchange, invest, and otherwise administer plaintiff's investments.

The gravamen of plaintiff's complaint is the claim that National City was aware of, but ignored, the specific directions contained in the IPS with respect to the allocation of assets, in breach of the promise set forth in paragraph 5 of the Agreement to "sell, exchange, invest and otherwise deal with the property as [plaintiff] from time to time direct[s]." Item 30, Ex. A, p.1. However, the IPS document itself was not incorporated into the Agreement, nor was it referenced anywhere in the documents comprising the

Agreement. In the absence of any evidence to show or suggest that both parties clearly intended to be bound by the detailed terms of the IPS, or that abiding by those terms would have somehow enhanced plaintiff's right to receive the benefits of the bargain, the court is in no position to imply those terms as necessary to prevent injustice.

As the deposition testimony reflects, the IPS was prepared by Mr. Chiampou in connection with his role as plaintiff's financial advisor to provide retirement planning services. *Id.*, Ex. I, at 22-23. It was essentially a proposed outline of the terms for hiring Mr. Chiampou as investment advisor in choosing and monitoring the performance of money managers for plaintiff's funds. *Id.* at 26-32. The IPS was never executed, and plaintiff never engaged Mr. Chiampou for that purpose. *Id.* at 27, 37. Plaintiff also testified at his deposition that, while he contacted Ed Kavanaugh at National City from time to time to discuss the poor performance of his investment account, he did not give Mr. Kavanaugh or anyone at National City any specific directions about how his funds should be allocated. *Id.*, Ex. H, at 74-78.

In essence, plaintiff seeks to imply the terms of the IPS as a guarantee against the investment losses he (like most investors during the relevant period) suffered as a result of poor market performance. However, the court cannot imply contractual terms that would override the express disclaimer of guaranteed market performance and acknowledgment of investment risks set forth in the "Disclosure Statement" executed by plaintiff and incorporated into the contract documents.

Finally, and not surprisingly, none of the cases cited by the parties directly addresses the situation faced here involving a claim that a money manager investing a client's funds under a discretionary agency contract is bound by the duty of good faith and

fair dealing to follow precise asset allocation directions set forth in an unexecuted and unincorporated draft investment policy statement.

Accordingly, based on this court's reading of Pennsylvania law, and considering the undisputed evidence of record, no reasonable jury could find in plaintiff's favor on his claim that National City breached either the express terms of the Agreement or any implied covenant of good faith and fair dealing.

**C.        Plaintiff's Cross-Motion:  Breach of Fiduciary Duty**

In response to defendant's summary judgment motion, plaintiff contends that National City's failure to follow the directives of the IPS amounts to a clear breach of fiduciary duty, and requests entry of summary judgment in his favor on this ground. He also requests that the court order a hearing on damages. These requests must be rejected.

As set forth above, the complaint in this action sets forth a single claim for breach of the Agreement's implied covenant of good faith and fair dealing, based entirely on plaintiff's allegations regarding National City's failure to comply with the investment parameters set forth in the IPS. There is no breach of fiduciary duty claim pleaded, and the law is clear that a complaint cannot be amended merely by raising new theories in the papers opposing a summary judgment motion. *See Beckman v. U.S. Postal Service*, 79 F. Supp. 2d 394, 407-08 (S.D.N.Y. 2000) (citing cases). As explained in *Beckman*:

> Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense. Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that "it is

> inappropriate to raise new claims for the first time in submissions in opposition to summary judgment."

*Id.* at 407 (quoting *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 170 F.R.D. 111, 119 (S.D.N.Y. 1997)) (citing cases); *see also Sabella v. Scantek Medical, Inc.*, 2009 WL 3233703, at *36-37 (S.D.N.Y. September 25, 2009).

Ordinarily, the court will entertain a motion for leave to amend to assert claims supported by the factual allegations in the complaint. *See* Fed. R. Civ. P. 15(a)(2) (court should freely give leave to amend "when justice so requires"); *Flickinger v. Harold C. Brown & Co., Inc.*, 947 F.2d 595, 600 (2d Cir. 1991) ("federal pleading is by statement of claim, not by legal theory") (citing *Newman v. Silver*, 713 F.2d 14, 15 n.1 (2d Cir. 1983)). It is within the discretion of the district court whether to grant or deny leave to amend, guided by such considerations as absence or presence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).

In this case, there is good reason to deny leave to amend to allow plaintiff to pursue a claim for damages based on breach of fiduciary duty. As noted in the *Beckman* case, "[l]eave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting a motion . . . for summary judgment, particularly when the new claim could have been raised earlier." *Beckman*, 79 F. Supp. 2d at 408. Thus, the court is acting within its discretion to refuse to consider an argument based on a new legal theory raised for the first time in response to a meritorious summary

judgment motion on the single claim pleaded in the complaint. *Id.* at 408-09; *see also Skippers & Maritime Services Ltd. v. KfW*, 2010 WL 882991, at *5 (S.D.N.Y. March 5, 2010) (proposed amendment is "especially prejudicial" and "particularly disfavored" if motion to amend is brought after discovery has closed and opposing party has moved for summary judgment).

Accordingly, for reasons of undue delay and prejudice, the court declines to allow plaintiff to pursue a previously unstated claim for breach of fiduciary duty.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment (Item 28) is granted, plaintiff's cross-motion for partial summary judgment and a hearing on damages (Item 40) is denied, and the complaint is dismissed.

The Clerk of the Court is directed to enter judgment in favor of defendant, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: March 29, 2010
p:\opinions\06-217.mar26.10